NAME Adron Bates

PRISON NUMBER D-92724

CURRENT ADDRESS OR PLACE OF CONFINEMENT
P.O.Box 5246 Fac D2 136

CITY, STATE, ZIP CODE
Corcoran, CA 93212





FILED

SEP - 4 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Adron Bates                              ,

(FULL NAME OF PETITIONER)

**PETITIONER**

v.

Ken Clark                                ,

(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])

**RESPONDENT**
and

The Attorney General of the State of
California, Additional Respondent.       ,

Civil No **'08 CV 1625 JAH PCL**

(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

**PETITION FOR WRIT OF HABEAS CORPUS**

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack:
Superior Court of California, County of San Diego
220 West Broadway, San Diego, CA 92101

2. Date of judgment of conviction: September 30, 2004

3. Trial court case number of the judgment of conviction being challenged: D048360

4. Length of sentence: 20 years

CIV 68 (Rev. Jan. 2006)

cv

5. Sentence start date and projected release date:
2004-2020

6. Offense(s) for which you were convicted or pleaded guilty (all counts):
Selling cocaine base & possession of cocaine base

7. What was your plea? (CHECK ONE)

    (a) Not guilty      XX

    (b) Guilty        ☐

    (c) Nolo contendere ☐

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)

    (a) Jury        ☒

    (b) Judge only   ☐

9. Did you testify at the trial?

   ☒ Yes ☐ No

### DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?
XX Yes ☐ No

11. If you appealed in the **California Court of Appeal**, answer the following:

    (a) Result: Denied

    (b) Date of result (if known): July 3, 2007

    (c) Case number and citation (if known): D048360

    (d) Names of Judges participating in case (if known):   3

    (e) Grounds raised on direct appeal:

Compelling Bates to appear for his jury trial in jail clothing,
over his objection, deprived him of his due process right to a fair
trial and his right to equal protection

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:

    (a) Result: Judgment affirmed

    (b) Date of result (if known): September 19, 2007

    (c) Case number and citation (if known): S155304

    (d) Grounds raised:

Same as 11(e)

13. If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition:

    (a) Result:

    (b) Date of result (if known):

    (c) Case number and citation (if known):

    (d) Grounds raised:

## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?
  ☐ Yes ☐ No

15. If your answer to #14 was "Yes," give the following information:

    (a) **California Superior Court** Case Number (if known):

    (b) Nature of proceeding:

    (c) Grounds raised:

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
      ☐ Yes ☐ No

    (e) Result:

    (f) Date of result (if known):

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?
  ☐ Yes ☐ No

CIV 68 (Rev. Jan. 2006)

cv

17. If your answer to #16 was "Yes," give the following information:

    (a) **California Court of Appeal** Case Number (if known):

    (b) Nature of proceeding:

    (c) Names of Judges participating in case (if known)

    (d) Grounds raised:

    (e) Did you receive an evidentiary hearing on your petition, application or motion?
        ☐ Yes ☐ No

    (f) Result:

    (g) Date of result (if known):

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
    ☐ Yes ☐ No

19. If your answer to #18 was "Yes," give the following information:

    (a) **California Supreme Court** Case Number (if known):

    (b) Nature of proceeding:

    (c) Grounds raised:

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
        ☐ Yes ☐ No

    (e) Result:

    (f) Date of result (if known):

20.  If you did *not* file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court**, containing the grounds raised in this federal Petition, explain briefly why you did not:

## COLLATERAL REVIEW IN FEDERAL COURT

21.  Is this your **first** federal petition for writ of habeas corpus challenging this conviction?
      ☒ Yes ☐ No          (IF "YES" SKIP TO #22)

     (a)  If no, in what federal court was the prior action filed?

     (i)  What was the prior case number?

     (ii)  Was the prior action (CHECK ONE):

               Denied on the merits?              ☐

               Dismissed for procedural reasons?  ☐

     (iii)  Date of decision:

     (b)  Were any of the issues in this current petition also raised in the prior federal petition?
          ☐ Yes ☐ No

     (c)  If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
          ☐ Yes ☐ No

---

CAUTION:

- **Exhaustion of State Court Remedies:**  In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court.  This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present *all* other grounds to the California Supreme Court before raising them in your federal Petition.

- **Single Petition:**  If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- **Factual Specificity:**  You must state facts, not conclusions, in support of your grounds.  For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do.  A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

---

## GROUNDS FOR RELIEF

22. State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground. (e.g. what happened during the state proceedings that you contend resulted in a violation of the constitution, law or treaties of the United States.) If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: COMPELLING BATES TO APPEAR FOR HIS JURY TRIAL IN JAIL CLOTHING, OVER HIS OBJECTION, DEPRIVED BATES OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL AND HIS RIGHT TO EQUAL PROTECTION OF THE LAWS.

Supporting FACTS: Before the commencement of trial, the court ordered Bates be "dressed-out" in civilian clothing, not jail clothing, for trial. (Aug. RT:1; 3 RT: 355) On Monday, September 27, 2004, during pretrial proceedings and before jury selection commenced, Bates was involved in an incident in the courtroom. (Aug. RT: 8-9; 3 RT: 352-53) As a result of that incident, his clothes were soiled and unwearable. (3 RT:355-56) On the following day, Bates was brought to the courtroom in jail clothing. (3 RT: 355-56) In response to the court's comments about his appearing in jail clothing, Bates himself stated, "I am not going to have a fair trial, and I'm not going to go along with this here." (3 RT: 356) The court nevertheless proceeded with jury selection with Bates wearing jail clothing. (3 RT: 388) Bates remained in jail clothing for the duration of the trial. (4 RT: 553-55) Requiring Bates to appear before the jury dressed in jail clothing, over his express objection, violated both his due process right to a fair trial and his equal protection rights, requiring reversal of the judgment.

The due process guarantee of the 14th Amdt prohibits the states from compelling a criminal defendant, over his objection, to(see p.19)

Did you raise **GROUND ONE** in the **California Supreme Court**?

[X] Yes ☐ No.

If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition): Petition for Review

(2) Case number or citation: S155304

(3) Result (attach a copy of the court's opinion or order if available): See attached

**(b) GROUND TWO:**


**Supporting FACTS:**


**Did you raise GROUND TWO in the California Supreme Court?**

☐ Yes ☐ No.

    If yes, answer the following:

   (1)   Nature of proceeding (i.e., petition for review, habeas petition):

   (2)   Case number or citation:

   (3)   Result (attach a copy of the court's opinion or order if available):

**(c)** **GROUND THREE:**

**Supporting FACTS:**

**Did you raise GROUND THREE in the California Supreme Court?**

☐ Yes ☐ No.

    If yes, answer the following:

(1)    Nature of proceeding (i.e., petition for review, habeas petition):

(2)    Case number or citation:

(3)    Result (attach a copy of the court's opinion or order if available):

**(d)   GROUND FOUR:**


**Supporting FACTS:**










**Did you raise GROUND FOUR in the California Supreme Court?**

☐ Yes ☐ No.

If yes, answer the following:

    (1)   Nature of proceeding (i.e., petition for review, habeas petition):

    (2)   Case number or citation:

    (3)   Result (attach a copy of the court's opinion or order if available):

**23.** Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes   ☒ No

**24.** If your answer to #23 is "Yes," give the following information:

(a)  Name of Court:

(b)  Case Number:

(c)  Date action filed:

(d)  Nature of proceeding:

(e)  Name(s) of judges (if known):

(f)  Grounds raised:

(g)  Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes   ☐ No

**25.** Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a)  At preliminary hearing . . . . . . . .   San Diego Public Defenders Office

(b)  At arraignment and plea . . . . . . .   Same as above

(c)  At trial . . . . . . . . . . . . . . . . . . . . .   Same as above

(d)  At sentencing . . . . . . . . . . . . . . .   Same as above

(e)  On appeal . . . . . . . . . . . . . . . . .   Martha Gill, 191 Calle Magdalena,
Suite 270, Encinitas, CA 92024

(f)  In any post-conviction proceeding .

(g)  On appeal from any adverse ruling in a post-conviction proceeding:

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☐ Yes   ☒ No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
☐ Yes   ☒ No

   (a)  If so, give name and location of court that imposed sentence to be served in the future:

   (b)  Give date and length of the future sentence:

   (c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
   ☐ Yes   ☐ No     Unsure

28. Consent to Magistrate Judge Jurisdiction

   In order to insure the just, speedy and inexpensive determination of Section 2254 habeas cases filed in this district, the parties may waive their right to proceed before a district judge and consent to magistrate judge jurisdiction. Upon consent of all the parties under 28 U.S.C. § 636(c) to such jurisdiction, the magistrate judge will conduct all proceedings including the entry of final judgment. The parties are free to withhold consent without adverse substantive consequences.

   The Court encourages parties to consent to a magistrate judge as it will likely result in an earlier resolution of this matter. If you request that a district judge be designated to decide dispositive matters, a magistrate judge will nevertheless hear and decide all non-dispositive matters and will hear and issue a recommendation to the district judge as to all dispositive matters.

   You may consent to have a magistrate judge conduct any and all further proceedings in this case, including the entry of final judgment, by indicating your consent below.

Choose only one of the following:

☐ Plaintiff consents to magistrate judge jurisdiction as set forth above.     **OR**     ☒ Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case.

29. Date you are mailing (or handing to a correctional officer) this Petition to this court:

September 10, 2008

CIV 68 (Rev. Jan. 2006)

cv

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_____

SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

September 10, 2008

(DATE)

*Adron Bates*

SIGNATURE OF PETITIONER

## INTRODUCTION

Petitioner Adron Bates ("Bates") files this present writ from the judgment entered after a jury convicted him of selling cocaine base Health & Safety Code sec. 11352(a) and possession of cocaine base for sale Health & Safety Code sec. 11351.5 and he admitted 2 prior convictions of selling cocaine base Health & Safety Code sec. 11370.2(a) 6 prior prison terms Penal Code secs. 667.5(b), 668 and one prior conviction qualifying as a "strike" under the 3 Strikes Law Pen.Code sec. 667(b)-(i); 1170.12

The judgment should be reversed, because the trial court compelled Bates, over his objection, to appear for his jury trial wearing jail clothing, in violation of his rights to due process and equal protection. Appearing before the jury in jail clothing undermined the presumption of innocence and impaired the credibility of Bates' testimony. Because Bates' defense rested largely on his own testimony, the error was not harmless beyond a reasonable doubt.

The objection to jail clothing was made by Bates himself and not his attorney. Because Bates' response to the court's statements on the issue clearly indicated he did not wish to go trial in jail clothes and believed that doing so would deny him a fair trial, his objection was sufficient to raise the issue. If arguendo Bates' attorney was required to add his own objection, the court's comments on the issue demonstrate the court viewed Bates' appearing in jail clothes as a fait accompli and additional objection by counsel would have been futile. Alternatively, if an objection by counsel was required, counsel's failure to make that

objection deprived Bates of the effective assistance of counsel.

## STATEMENT OF THE CASE

An amended information filed May 11, 2004, charged Bates with selling cocaine base Health & Safety Code sec. 11352(a) Pen.Code sec. 1203.073(b)(7) (count one) possession of cocaine base for sale H&SC sec. 11351.5 (count two) resisting an officer Pen.Code sec. 148(a)(1) (count three) and attempting to destroy or conceal documentary evidence P.C. secs. 135, 664 The information further alleged Bates had 2 prior convictions for selling cocaine base H&SC sec. 11370.2(a) and one "strike" conviction P.C. secs. 667(b)(i), 1170.12 and had served 6 prior prison terms P.C. secs. 667.5(b), 668 Bates pleaded guilty and denied the allegations.

The case was tried to a jury on September 21-30, 2004. At the beginning of trial, on September 21, 2004, the court granted the prosecution's motion to dismiss counts 3 & 4. On October 1, 2004, the jury reached verdicts, finding Bates guilty on both counts and finding he sold cocaine base P.C. secs. 1203.073(b)(7) Bates admitted the prior conviction H&SC sec. 11370.2(a); P.C. sec 1203.07(a)(11) prior prison term PC secs. 667.5(b) 668 and "strike" PC secs. 667(b)-(i), 1170.12 allegations.

On March 24, 2996, the court sentenced Bates to prison for a total of 20 years in this case, as follows. One count 1, the court sentenced Bates to 8 years (the middle term of 4 years, doubled pursuant to the 3 Strikes Law), plus consecutive terms of 3 years each for the 2 allegations pursuant to H&SC msec. 11370.2(a) and 1

year for each of thr 6 prior prison terms. PC secs. 667.5(b), 668
The court stayed sentence on count 2, pursuant to PC sec. 654.

### STATEMENT OF FACTS

On October 13, 2003, transit enforcement officers Esteban
Zamnrano & Santiago Rodriguez were working in plain clothes along
trolley line on C Street in downtown San Diego. Their assignment
was to look for narcotics activity Zambrano notice Bates walking
back and forth along C Street, between the Civic Center & 5th
Avenue trolley stations, for about an hour. At around 12:25 p.m.,
Zambrano saw Bates talking to Paul Eggleston. Eggleston approached
Bates, the 2 men nodded to each other, and Eggleston asked Bates,
"What do you got?" Bates answered, "I have a deuce five. I have my
last duece five." "Duece five" is a reference to rock cocaine or
some other type of narcotic. Eggleston took some bills out of his
pocket and handed them to Bates. Bates took the money and appeared
to count it, the reached into his waistband and pulled out an
off-white rock, about the size of a pebble, which he handed to
Eggleston. Both men then went their separate ways.

Zambrano did not observe any previous interactions between
Bates & Eggleston. He did not see Bates give any money to
Eggleston, or Eggleston give anything that looked like rock
cocaine to Bates. He did not see Bates hold up the rock and look
at it. He did not hear Bates say he wanted a refund.

After Bates & Eggleston went their separate ways, Zambrano
motioned to Rodriguez to grab Bates. Rodriguez pulled out his
badge and walked toward Bates, who turned around. Zambrano then
pulled out his badge and told Bates he need to talk to him and

explained what he had seen. Bates dropped to the ground and
stuffed the money in his mouth. After Zambrano handcuffed Bates,
he collapsed to the ground; he was coughing and appeared to be
having trouble breathing. Zambrano noticed Bates was chewing on
some money and told him to spit it out. Rodriuez eventually
persuaded Bates to spit out the money, consisting of a $20 bill &
5 $1 bills.

another officer stopped Eggleston. A rock which appeared to be
rock cocaine was found between his index and middle fingers. It
looked like the rock Zambrano had seen Bates hand Eggleston. Bates
did not have any rock cocaine or any other controlled substance in
his possession. He had $93.00 in one of his shoes.

An analysis of the rock taken from Eggleston determined it
contained cocaine base. Before any test were performed, the weight
of the rock was 0.11 gram.

San Diego detective Larry Stewart opined, in response to a
hypothetical question, that the hypothetical described a "street
deal." The hypothetical question did not describe a buyer seeking
a refund for an earlier purchase. If Stewart had seen Bates
& Eggleston nod to each other and exchange $25.00 and something
that looked like a pebble, be would believe " street hand-to-hand
went down." The fact that neither of them had a pipe or any of
means of using rock cocaine would not change his opinion.

Under Department of Justice guidelines, a dose of rock cocaine
is 0.10 gram. One-tenth of a gram of rock cocaine is $10.00 worth.
The street value of the rock in this case (in its present
condition, after testing) is $10.00. If a buyer paid $25.00 for

that rock, he paid too much. If this occurs, the buyer will sometimes tell the seller he "shorted" and ask for his money back or for more of the drug, to make up the difference.

Stewart has never encountered a blind street-level rock cocaine dealer.

### DEFENSE EVIDENCE

Bates testified in his own defense. He has been visually impaired since childhood. He is legally blind. He suffers from glaucoma which has gotten worse over the years. His eyesight is continuing to deteriorate. He is totally blind in his left eye. He has "tunnel vision" and blurred vision in his right eye. At the time of trial, he had a contact lens for his right eye, which was of some help. His sight in his right eye was worse on October 13, 2003, because he did not have the contact lens at the time.

He has had a life-long addiction to rock cocaine, beginning at the age of 14. He is now 38 years old. He has been a defendant many times before. He has been convicted of burglary, petty theft, selling rock cocaine and being under the influence of drugs. Whenever he is not in custody, he uses rock cocaine. He sold rock cocaine in the past, but has not done so since his vision deteriorated. He can now buy, but not sell.

Bates did not know Eggleston before October 13, 2003; they met for the first time that day. Thy first met up near the corner of 5th Avenue & C street. Eggleston asked Bates, "What's up?" to which he replied by asking if Eggleston had any crack. When Eggleston said he did, Bates told him he had $25.00 to spend. Bates gave Eggleston the money, but Eggleston told him there were

too many police around and suggested walking down C Street. When they reached the intersection of 3rd Avenue and C Street, When they reached the intersection of 3rd Avenue & C Street, Eggleston showed Bates something that looked like a rock. While Eggleston held the rock in his hand, Bates felt it with his fingers to determine its size. Bates told Eggleston the rock was too small and asked for his money back. Eggleston offered to give him some more cocaine later, but Bates declined. Eggleston gave Bates his money back and the two men went their separate ways.

Two men ran up to Bates and wrestled him to the ground. He did not know who they were. He thought they were associates of Eggleston and were trying to take his money, so he put the money in his mouth.

The two men did not identify themselves as security officers until after they had handcuffed on the ground. He could not see their badges. He coughed up the money after they identified themselves.

Bates did not sell rock cocaine to Eggleston on October 13, 2003. He was the buyer, not the seller.

continued from page: 6

appear at his jury trial in jail or prison prison clothing. U.S. Const., 14th Amdt.; Estelle v. Williams (1976) 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126, 135 ["the State cannot, consistently with the 14th Amdt., compel an accused to stand trial before a jury while dressed in identifiable prison clothes"]; Requiring a defendant to appear before a jury in jail clothing undercuts "the fundamental presumption of our system of criminal justice that the defendant is innocent until proved guilty beyond a reasonable doubt." Estelle v. Williams, supra, 425 U.S. at 503-04, 96 S.Ct. at 1963-94, 48 L.Ed.2d 126, 130 Where a defendant is required to appear before a jury trial in jail clothing, his attire "is a constant reminder to the jury that the defendant is in custody," creates "an unacceptable risk" the jury will impermissibly consider this factor or speculate about the reasons the defendant is in custody, and labels the defendant as someone not worthy of credibility. Estelle v. Williams, supra, 425 U.S. at 504-05, 518-19 [dis.opn.of Brennan, J.], 96 S.Ct. at 504 1699-1700, 48 L.Ed.2d at 130-31, 138-39

Requiring a defendant who is unable to secure his release on bail to appear before his trial jury in jail clothing also runs afoul of the constitutional guarantee of equal protection. Estelle v. Williams, supra, 425 U.S. at 505-06, 96 S.Ct. at 1694, 48 L.Ed2d at 131 As the Court explained in Estelle v. Williams, supra, 425 U.S. at 505-06, 96 S.Ct. at 1694, 48 L.Ed.2d at 131:

> Similary troubling is the fact that compelling the accused to stand trial in jail garb operates usually against only those who cannot post bail prior to trial. Persons who can secure release **are not** subjected to this condition. To impose the condition on one category of defendants, over objection, would be repugnant to the concept of equal justice embodied in the 14th Amdt. <u>Ibid</u>.

Here Bates was required to appear at his jury trial in jail clothing, over his objection that doing so would deprive him of a fair trial. The court's refusal to allow Bates a reasonable time to obtain replacement civilian clothing thus deprived him of his rights to due process and equal protection. <u>Estelle v. Williams</u>, <u>supra</u>, 425 U.S. at 505-06 Moreover, the court's offer, on September 29, 2004, to allow counsel to bring new clothes for Bates, did not provide a meaininigful remedy. By that time, as the court itself recognized the jury had already seen Bates in jail clothes, and that "bell" could not be "unrung."

Bates anticipates respondent may contend his personal objection was not sufficient, and his counsel who remained silent, was required to raise an objection on his behalf to appreaing at trial in jail clothing. However, Bate's statement, in direct response to the court's comments on the subject, that he was not going to receive a fair trial trial, and he was not going to go along with it were sufficient to put the court on notice that he objected, on due process grounds, to appearing before the jury in jail clothing. Moreover, even assuming arguendo some additional objection by his attorney was required, such an objection would have been futile. On the prceding day, after the incident in the courtroom expressed its view, as follows:

> We are continuing the jury trial this morning. Mr. Bates came and
> reacted once again violently. And at this point I'm going to make a
> finding that Mr. Bates repeated almost exactly the same thing as he
> did last Friday, that he knows what he's doing, that he's intentionally
> disrupting the court. And I will take appropriate measures to prevent
> that....[¶] So based on those previous findings and his request for
> making continuances one after the other-I have granted many
> continuances. I have denied his continuance this last time. I believe
> that he knows exactly what he's doing. He's been through the system
> many times and is intentionally trying to disrupt his proceedings.
> And at this point I will find good cause to continue this matter
> till tomorrow moring at 9:00 a.m.

In addition, the court's comments on September 28, 2004, about

the subject of defendant's clothing indicate the court viewed his

appearance in jail clothing as a fait accompli, and the only

remaining issue was the manner in which the court would address the

subject with the prospective jurors:

> I will explain to the jury, Mr. Bates-and if any of them have any
> concerns because you are dressed in jail uniform, I will exclude you. If
> they have any bias or prejudice against you because of that, I won't let
> them stay. I've asked for an additional number of jurors just in case I
> have to do that. So, if some of them feel that they can't be fair and
> impartial to you-they have to be fair and impartial to both sides-I will
> also be explaining to them-in fact, one of the things I will be asking is,
> you are in custody, and that's not to be considered, one way or the other.
> If they have any concerns or bias or prejudice because of that, I will go
> ahead and excuse them.

Indeed, the court's decision to request additional prospective

jurors be sent to the courtroom because Bates wouls be appearing in

jail clothes indicates the court had already decided the case would

proceed with Bates in jail clothing. Under these circumstances,

where the court's mind was already made up, any objection by counsel,

in addition to the objection already stated by Bates himself, would

have been futile.

Bates also anticipates respondent may contend he somehow

"waived" or "forfeited" his right not to apprea in jail clothes,

because his actions resulted in the soiling of the original set of

"dress-out" clothes. Howver, a waiver of a constitutional right requires "an intentional relinqishment or abandonment of a known right or privilege." Johnson v. Zerbst (1938) 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed.2d 1461, 1466 Here, as discussed above, Bates personally expressed his objection to going to trial in jail clothes. Moreover, his attorney's actions in obtaining the original set of civilian clothes and arranging for their delivery to him for the September 27, 2004, court session, indicate there was no intent to waive his right to appear in civilian clothes. That Bates may have acted out in the courtroom for other reasons, resulting in the soiling of clothes which could easily have been replaced, is not sufficient to establish a knowing and intentional abandonment of his due process and equal protection rights to appear before the jury in civilian clothes. Any claim of waiver should be rejected.

Because compelling a defendant to appear for trial in jail clothing, over his objection, is federal constitutional error, reversal is reuired unless the error was harmless beyond a reasonable doubt. Chapman v. California (!967) U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710-11 Under this standard, reversal is required if it appears "there is a reasonable possibility that the [error] complained of might have contributed to the conviction." Yates v. Evatt (1991) 500 U.S. 391, 403, 111 S.Ct. 1884, 114 L.Ed.2d 432, disapproved on another point in Estelle v. McGuire (1991) 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385, 399 In determining whether an error was harmless under this standar, the focus is not the sufficiency of the evidence to support the verdict, in the absence of the error, but on the effect of the error on the verdict

-22-

actually rendered. <u>Sullivan v. Louisiana</u> (1993) 508 U.S. 275, 279,

113 S.Ct. 2078, 2081, 124 L.Ed. 182; <u>Chapman</u>, <u>supra</u>, 386 U.S. 25-26

As the U.S. Supreme Court explained in <u>Sullivan v. Louisiana</u>:

> ...the question [<u>Chapman</u>] instructs the reviewing court to consider is
> not what effect the constitutional error might generally be expected to
> have upon a reasonable jury, but rather what effect it had upon the
> guilty verdict in the case at hand. [Citation]. Harmless-error review
> looks... to the basis on which "the jury actually rested its verdict."
> [Citation]. The inquiry, in other words, is not whether, in a trial that
> occurred without the error, a guilty verdict would surely have been
> rendered, but whether the guilty verdict actually rendered in this trial
> was surely unattributable to error. <u>Sullivan</u>, <u>supra</u> 508 U.S. at 279

Here Bates' primary defense was that he was the buyer, not the

seller of the cocaine, and when observed by the trolley officers,

he was returning to Eggleston the concaine he had purchased from

Eggleston, and getting his money back, because he did not get his

money's worth. Bates also asserted that his severe visual impairment

precluded him from functioning as a street-level sellseller of drugs.

Although the prosecution's witness, LArry Stewart, acknowledged that

such returns of drugs sometimes occur, and the "rock" in question

was not worth twenty-five dollars, Bates' defense rested largely on

his own testimony. His credibility was therefore crucial to his

case. His jail clothing was "a constant reminder" of his in custody

status and undermined the credibility of his testimony. The

principle factual issue the jury was asked to decide was whether the

transaction observed by the trolley officers was a sale, as they

believe it to be, or merely the rescission of an unsatisfactory

purchase, as Bates testified. Under these circumstances, the

"subliminal" effect on the jury of viewing Bates in jail clothing

throught the trial surely contributed to the jury's rejection of

Bates' testimony that he was returning a too-small amount of drugs

for a refund.

Moreover, the court's instructions were not sufficient to dispel the effects of viewing Bates in jail Garb. Although the court stated it had instructed the jurors on September 28, 2004, to disregard Bates' arrest or in-custody status, the specific content of the instruction does not appear in the record, and it is unclear from the court's comments whether the instruction specifically mentioned jail clothing. The instructions given to the jury at the close of the case, before their deliberations, did not mentioned the subject of Bates' jail clothing. At the conclusion of the case, the jury was instructed, pursuant to CALJIC 1.00, that they should not be biased against Bates because he had been arrested, charged, and brought to trial. However, the instruction did not mentioned Bates' in custody status in jail clothing and thus was not sufficient to dispel the prejudicial effect of the jail clothing. Similary, CALJIC 1.04, which instructed the jury to disregard the physical restraints placed on Bates after the incident, did not address the issue of his jail clothing and thus was not sufficient to inform the jury to disregard his jail garb, as well. For these reasons, the jury's verdict was not "surely unattributable" to the error which compelled Bates to appear before the jury in jail clothing.

If, arguendo, Bates' attorney was required to object to Bates' going to trial in jail clothing, despite Bates' own objection and the futility of such an objection, counsel's failure to make such an objection deprived Bates of the effective assistance of counsel. A criminal defendant's right to the effective assistance of counsel is based upon the constitutional right to counsel, guaranteed by the

6th Amdt. to the U.S. Const. and by Article I, §15 of the Cal. Const. Effective assistance of counsel requires that the attorney act "in a manner to be expected of reasonably competent attorney's acting as diligent advocates."

To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deifient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington (!984) 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 Where there can be no satisfactory explanation for counsel's act or omission, the claim of ineffective assistance of counsel may be raised on direct appeal.

If, arguendo, Bates' counsel was required to add his own objection to his client's objection to going to trial jails clothes, counsel did not meet the standard of reasonably competent representation when he failed to make such an objection. The record does not reveal counsel's reasons for the failure to object, but this omission cannot reasonably be explained as a tactical deicsion or a matter of trail strategy. As discussed above, appearing before the jury in jail clothing severely impaired Bates' credibility and undermined his defense, which was based largely on his testimony. Inder these circumstances, there was no conceivable tactical advantage to Bates from appearing in jail clothing. Yet defense counsel inexplicably failed to support Bates' express objection to

-25-

going to trial in jail clothes. Such an omission cannot be characterized as "an informed tactical choice within the range of reasonably competence"; on the contray, "there simply [can] be no satisfactory explanation." For these reasons, counsel's failure to object to his client's appearing before the jury in jail clothes deprived Bates of the effective assistance of counsel.

### CONCLUSION

For the reasons stated above, petitioner Adron Lee Bates respectfully request the judgment be revered, thereby allowing him to be immediately released or sentenced him to the People's offer of 9 years.

Dated: September 10, 2008

Respectfully Submitted,

Adron Lee Bates
Petitioner in Pro se

-27-

Court of Appeal, Fourth Appellate District, Div. 1 - No. D048360
**S155304**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

THE PEOPLE, Plaintiff and Respondent,

v.

ADRON LEE BATES, Defendant and Appellant.

---

The petition for review is denied.

SUPREME COURT
# FILED

SEP 1 9 2007

Frederick K. Ohlrich Clerk

---
Deputy



**GEORGE**

---
Chief Justice

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**2254    1983**

**FILING FEE PAID**
Yes     No

**IFP MOTION FILED**
Yes

**CONSENT TO**

**COMPLETED TO**

**FILED**
SEP - 4 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

## I (a) PLAINTIFFS

**Adron Bates**

Ken Clark

(b) COUNTY OF RESIDENCE OF FIRST LISTED   **Kings**
PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

**Adron Bates**
**PO Box 5246**
**Corcoran, CA 93212**
**D-92724**

ATTORNEYS (IF KNOWN)

**'08 CV 1625 JAH PCL**

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff     ☒ 3 Federal Question
                                        (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant     ☐ 4 Diversity (Indicate Citizenship of Parties in Item III

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX
(For Diversity Cases Only)     FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

### 28 U.S.C. 2254

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☒ 530 General | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY (See Instructions):     JUDGE

Docket Number

DATE    9/4/2008

SIGNATURE OF ATTORNEY OF RECORD

R. Melley